**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | No. 1:20-cr-214-LO-1 |
| HUGO NAVARRO-GALVAN, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

### I.   INTRODUCTION

Hugo Navarro-Galvan, by and through undersigned counsel, respectfully files this Memorandum in Aid of Sentencing. Mr. Navarro-Galvan comes before this Honorable Court both humbled and contrite following his acceptance of responsibility upon entering a plea of guilty to one count of Conspiracy to Distribute 5 Kilograms or More of a Mixture and Substance Containing a Detectable Amount of Cocaine, a schedule II Controlled Substance, in violation of 21 U.S.C. § 841(a)(1) and 846. *See generally* PSR.

Mr. Navarro-Galvan is only thirty-three (33) years old, originally from Mexico, and was brought to the United States when he was two (2) years old by his parents. *See* PSR ¶ 61-62. Mr. Navarro-Galvan is married to his high school sweetheart, Maria, and together they have three children, ages 13, 10, and 5. *Id* at ¶ 65.

Each of the letters written by Mr. Navarro-Galvan's family and friends in support of him paints a picture of a decent man who is family oriented and consistently goes out of his way to care for those he loves and to help those in need. *See* Exhibits B-H.

Based upon Mr. Navarro-Galvan's personal history and character, and the nature and circumstances of the offense, Mr. Navarro-Galvan respectfully requests that the Court impose a sentence of below the low-end of the guidelines. Such a sentence would be "sufficient, but not

greater than necessary" to achieve the legitimate purposes of sentencing,[1] particularly in light of Mr. Navarro-Galvan's minimal contact with the criminal justice system.

## II. THE LEGAL FRAMEWORK OF AN ADVISORY GUIDELINE RANGE

While this Court must still correctly calculate the guideline range, *Gall v. United States*, 552 U.S. 38, 49 (2007), it may not treat that range as mandatory or presumptive, *Id.* at 51; *see also Nelson v. United States*, 555 U.S. 350, 352 (2009), but as "one factor among several" to be considered in imposing an appropriate sentence under § 3553(a). *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). The Court must "consider all of the § 3553(a) factors," "make an individualized assessment based on the facts presented," *Gall* at 49-50, and explain how the facts relate to the purposes of sentencing. *Id.* at 53-60; *See also Pepper v. United States*, 131 S. Ct. 1229, 1242-43 (2011). The Court's "overarching" duty is to "'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough* at 101; *Pepper* at 1242-43.

In order to ensure that the guidelines are truly advisory and constitutional, this Court has the authority to disagree with a guideline as a matter of policy. Because "the Guidelines are now advisory . . ., as a general matter, courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough*. at 101-02 (internal punctuation omitted) (*citing Rita v. United States*, 551 U.S. 338, 351 (2007) (holding that district courts may find that the "Guidelines sentence itself fails properly to reflect § 3553(a) considerations").

---

[1] *See* 18 U.S.C. § 3553(a).

Additionally, "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). Permitting sentencing courts to consider the widest possible breadth of information about a defendant "ensures that the punishment will suit not merely the offense but the individual defendant." *Pepper* at 1240 (citing *Wasman v. United States*, 468 U. S. 559, 564 (1984)).

In this regard, "the district court's job is not [even] to impose a reasonable sentence. Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." *United States v. Foreman*, 436 F.3d 638, 644, n.1 (6th Cir. 2006). Accordingly, "if a district court were explicitly to conclude that two sentences equally served the statutory purpose of § 3553, it could not, consistent with the parsimony clause, impose the higher." *United States v. Ministro-Tapia*, 470 F.3d 137 (2d Cir. 2006).

### III. THE U.S. SENTENCING GUIDELINES

Undersigned counsel respectfully asserts that there is a difference in how the PSR calculates the guidelines and what Mr. Navarro-Galvan believes the applicable guidelines range is in this case as discussed below. *See* PSR ¶¶ 40-50. Mr. Navarro-Galvan respectfully submits that the proper guideline calculation is below:

**2018 Guidelines**

| | |
|---|---|
| USSG § 2D1.1(a)(5) & (c)(3) – Base Offense Level | 34 |
| USSG § 2D1.1(b)(1) – Specific Offense Characteristic – weapon | +2 |
| Total | 36 |

3

| | |
|---|---:|
| Acceptance of Responsibility USSG §3E1.1(a) | -2 |
| Acceptance of Responsibility USSG §3E1.1(b) | -1 |
| **TOTAL OFFENSE LEVEL** | **33** |

Mr. Navarro-Galvan has a criminal history score of one and a criminal history category of I for sentencing purposes. *See* PSR at ¶¶ 52-59. These calculations, with a total offense level of thirty-three (33), would result in an advisory Guidelines range for Mr. Navarro-Galvan of 135-168 months. *See* USSG Sentencing Table.

However, the PSR differs in its calculation of Mr. Navarro-Galvan's total offense level. The PSR claims there is an applicable three level increase due to Mr. Navarro-Galvan being a manager or supervisor. This would increase Mr. Navarro-Galvan's total offense level to thirty-six (36), which would result in an advisory range of 188-235 months. Both the Government and the defense object to the application of this role enhancement and ask the Court to calculate the advisory guideline range as 135-168 months.

IV.    **18 U.S.C. § 3553(A) FACTORS**

    **A.  The Nature and Circumstances of the Offense.**

Mr. Navarro-Galvan's involvement in the instant offense is extraordinarily regrettable. As stated in Mr. Navarro-Galvan's letter to the Court, "I am deeply sorry for my actions and ask for the court's forgiveness, I also ask for leniency." *See* Exhibit A. He tells the Court that although he came "from a good home, money was always an issue," and he witnessed countless arguments between his parents about money. *Id*. "Money was always scarce. We would struggle to make ends meet, sometimes food was little to none." *Id*.

Mr. Navarro-Galvan is a Dreamer, being brought to this country as a two-year-old. This made it extremely difficult for him to find stable, reliable employment – "as a dreamer not everyone would hire me." *Id*. When he was eighteen (18), his now-wife became pregnant with

their first child. Mr. Navarro-Galvan was unable to handle the pressure and did not want his family to grow up the way he did. *Id*. Thus, he turned to the "life of selling drugs, something I am not proud of." *Id*. Mr. Navarro-Galvan knows the errors of his ways and greatly regrets "choosing that path because now it is taking me away from my family and is hurting others I care about." *Id*. Mr. Navarro-Galvan wants to "be a better man," and if given a "second chance," he wants nothing more than to "set a better example for my kids." *Id*.

**B. Mr. Navarro-Galvan's History and Characteristics.**

Mr. Navarro-Galvan's wife, Maria Del Rosario Preciado Rodriguez, describes how her husband "has always been supportive of me and my dreams." *See* Exhibit B. "If it weren't for him … I wouldn't have grown to be the person, mother, and wife that I am." *Id*. She explains to the Court how Mr. Navarro-Galvan "took the responsibility of all the family" when his brother Raul was incarcerated previously, becoming a second father to his nephews and nieces and providing for them as if they were his own children for five years. *Id*. Although there were struggles throughout the years, Ms. Rodriguez is clearly proud of how her husband "kept pushing forward," doing everything he could to ensure the "whole family was okay and taken care of." *Id*. Ms. Rodriguez acknowledges that Mr. Navarro-Galvan has done wrong but notes that "he's doing everything in his power to amend his mistakes." *Id*. He is a "loving, caring, and supportive father," whose children need him. *Id*. Ms. Rodriguez asks the Court to "give him the opportunity to redeem himself." *Id*.

Mr. Navarro-Galvan's son and daughter both write letters telling the Court how much they love their father and need him in their lives. *See* Exhibits D & E. Mr. Navarro-Galvan's son, writes that his father "has always looked over me and took care of me." *See* Exhibit D. He recalls how his father would take him, his siblings, and cousins to their favorite water park growing up,

and how much they enjoyed spending family time together. *Id*. Mr. Navarro-Galvan's son writes how the "one thing I take from my father is his selflessness," and that he is "very giving to others *Id*. He ends his letter with a simple yet powerful statement: "I love my dad and I'll always need him in my life." *Id*. Mr. Navarro-Galvan's daughter explains how her relationship with her "dad has been good," and that "he treats me pretty sweetly." *See* Exhibit E. Even at the tender age of 10, she writes "the sacrifices my dad has done for my family and I is something I am forever grateful for." *Id*. She looks up to her father a lot, boldly stating "I admire him. He's my superhero." *Id*. She "can't imagine what her life would be without him," and "needs him home, because he's the best dad." *Id*.

A testament to his character was highlighted when Mr. Navarro-Galvan's brother, Raul, was incarcerated, and Mr. Navarro-Galvan took on the responsibility of caring for his brother's wife and children for a five-year period. Mr. Navarro-Galvan's niece writes "when my father was incarcerated, he was always looking over my siblings, mother, and I," and "is like a second father to me." *See* Exhibit C. She explains to the Court that although she has her own father who is amazing to her, that "it just feels nice to have two male's that I can consider a father figure." *Id*. She also acknowledges that her uncle "did wrong," but that he is "also wanting to give his family a better life." *Id*. She is grateful that her uncle is "approachable in any situation" and that "he still makes sure we're doing alright before he is." *Id*.

Mr. Navarro-Galvan's mother, Esperanza Galvan, writes that her son is "always dedicated to his family, wife, and children," and "is always attentive to his parents." *See* Exhibit F. Mr. Navarro-Galvan's sister, Ariana Navarro-Galvan writes that her brother is "a good person," who is "humble" and "caring." *See* Exhibit G. She asks the Court for "mercy on my brother," because "he has a family he needs to take care of, and they need him." *Id*. Mr. Navarro-

6

Galvan's brother-in-law, Johnny Vasquez, simply says that "he is a good man with a good heart," and ready to change." *See* Exhibit H.

It is clear that Mr. Navarro-Galvan is a true family man who made a series of terrible mistakes. He is looked up to his family and loved ones and is a strong, positive, father figure to not only his children, but his nieces and nephews. Mr. Navarro-Galvan is the type of person who is deserving of this Court's leniency.

### C. Mr. Navarro-Galvan Poses Little or No Risk of Recidivism.

Of all the purposes of sentencing, the need to protect the public from further crimes of the defendant is one of great practical concern and is the most capable of being measured. Fortunately, Mr. Navarro-Galvan does not fit the archetype of a person who will commit new criminal offenses or recidivate. And because of the reinvigorated role of the judiciary in sentencing, judges can now impose sentences that take such research into consideration to more effectively impose sufficient, but not greater than necessary, sentences.

The judiciary's bolstered role is especially important given the Commission's own findings that "there is no correlation between recidivism and Guidelines' offense level. Whether an offender has a low or high guideline offense level, recidivism rates are similar. While surprising at first glance, this finding should be expected as the Guidelines' offense level has long been recognized as not intended or designed to predict recidivism." *U.S. Sentencing Comm'n, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* at 15 (May 2004) (hereinafter *Measuring Recidivism*). Thus, the guidelines are at odds with 18 U.S.C. § 3553(a)(2)(C). Accordingly, *Booker* has freed the judiciary to remedy this inconsistency.

7

In addition to what has already been described about Mr. Navarro-Galvan's character demonstrating his ability to reform, the Commission has also objectively quantified his low likelihood of recidivism. For example, the Sentencing Commission's study confirms that recidivism rates decline relatively consistently as age increases. *See Measuring Recidivism* at 12. More specifically with respect to Mr. Navarro-Galvan, who is 33 years old and a Criminal History category of I have a recidivism rate of only 14.6 %. *Id.* at 28. There is, quite simply, nothing in the record to make this Court reasonably believe that Mr. Navarro-Galvan would commit any criminal offense in the future.

It is unfortunate that the Guidelines' offense levels do not take into consideration such data. This data exists yet is not utilized to inform the Commission's rulemaking. However, without even considering the circumstances of the offense, it is apparent that Mr. Navarro-Galvan is not a person who is statistically likely to recidivate. And when one considers such statistics in light of Mr. Navarro-Galvan's history, it is safe to assume that he will never again be arrested or charged with an offense.

Accordingly, Mr. Navarro-Galvan, by and through undersigned counsel, respectfully requests that the Court sentence him to a sentence of below the low end of the guidelines.

Respectfully submitted,

_____/s/_____
David Benowitz
Bar # 451557
*Counsel for Hugo Navarro-Galvan*
Price Benowitz LLP
409 7th Street, NW,
Suite 200
Washington, DC 20004
O: (202) 417-6000
C: (202) 271-5249
Fax: (202) 664-1331
David@PriceBenowitz.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 11th day of May 2021, I caused a true and correct copy of the foregoing Defendant's Memorandum in Aid of Sentencing to be delivered via ECF to Assistant United States Attorneys Bibeane Metsch and Michael Phillip Ben'Ary, United States Attorney's Office, 2100 Jamieson Avenue, Alexandria, Virginia 22314.

_____/s/_____
David Benowitz